AMERICAN REPUBLIC INSURANCE COMPANY *v.* BURKS.

4-6934                                          167 S. W. 2d 885

Opinion delivered January 25, 1943.

*Ernest Briner* and *M. J. Harrison,* for appellant.

*McDaniel, Crow* and *Ward,* for appellee.

GRIFFIN SMITH, C. J.   Dr. James A. Burks was injured between nine and half past nine o'clock the morning of December 16, 1941, when an automobile he was driving went into a ditch. He died four days later.

December 7 Dr. Burks applied to appellant for insurance. A policy dated December 20 came into appellee's hands after her husband's death. With it was a letter, material parts of which are copied in the margin.[1]

---

[1] The letter, in part, follows: "Enclosed please find policy you applied for. . . . We wish to thank you for your valuable business. . . . Now that you have received your policy, be proud of it. Keep it in force at all times, for as you know, there are many

The application, by its terms, was made a part of the policy, and the two, by express language, constituted the entire contract. Falsity of any answer material to the risk barred recovery.

The company declined to pay because, as it contended, the assured died from heart disease for which he had been treated within the period of five years mentioned in the policy. On this phase of the controversy there was conflicting testimony and the court did not err in submitting the issue to a jury. The company also denied the policy was delivered while the assured was in good health.[2]

Controlling, we think, is the concurrence of two facts: (a) the policy provision that it should not become effective unless delivered to and received by the assured while he was in good health, and (b) the serious injury received by Dr. Burks not later than 9:30 the morning of December 16. There was no substantial evidence to sustain the contention that the policy reached the assured before he left home in the automobile between 7:30 and 8:30 to drive from Benton to Traskwood.

Two witnesses told of transactions from which it is insisted an inference arose that the policy had been delivered prior to December 16. C. H. Womack testified that a man "called at his place" looking for Dr. Burks. This unknown said he wanted to see Dr. Burks about an insurance policy. He then asked whether the doctor was "reliable and a good prospect." The witness thought this conversation occurred the day before or the day after Dr. Burks was injured.

Charles Moody was in Dr. Burks' office a day preceding the accident. Someone walked in and said, "Here is your policy." The stranger handed a paper to Dr. Burks and talked with him. Moody saw a corner of the

people rejected by insurance companies because they are neither physically nor financially able to carry a policy similar to the one issued to you. . . . Again expressing our appreciation for your business, we are," etc. [The caption was "re your next premium, $21, will be due March 20, 1942." Date was "Little Rock, Ark., December 16, 1941"]

[2] The policy became effective at noon of the day delivered and accepted.

paper. A question by one of appellee's attorneys was, "You mean this blue border?"[3] The witness answered affirmatively. The next question was: "*This* could have been the policy?" Answer, "Yes, sir." Moody, on cross examination, admitted he did not know what insurance company the visitor represented; nor could he identify the instrument, or paper, given the doctor.

It is argued on behalf of appellee that appellant's policy was the only one any company had issued to Dr. Burks. This belief is based upon Mrs. Burks' testimony that in going through the doctor's possessions no other policies were found; hence, say counsel, the Moody testimony that someone handed Dr. Burks an envelope from which he took a blue-bordered paper, a "corner" of which was revealed, coupled with the stranger's comment that "Here is your policy," creates an inference of fact upon which the jury was justified in finding that the policy received by appellee after her husband's death was the one delivered by the stranger.

Infirmity of this contention is that the conclusion arises from speculation. Failure of Mrs. Burks to find other policies is at most only a circumstance. This testimony is not undisputed, the witness being *the* interested party. *Skillern* v. *Baker,* 82 Ark. 86, 100 S. W. 764, 118 Am. St. Rep. 52, 12 Ann. Cas. 243; *Salmon* v. *Boyer,* 139 Ark. 236, 213 S. W. 383. [Compare *Schaer* v. *Gliston,* 24 Ark. 137].

Evidence on behalf of appellant was that twenty-two applications were approved December 15 by the company's medical advisor. These, with two others, were sent to Little Rock Blue Print Company where reproductions were made. Included in the list was Dr. Burks' application. The blue print company's invoice was dated December 17. The insurance company did not send its policies out without having attached to them a photostatic reproduction of the application.[4] Issuing dates were the first, tenth, and twentieth of each month. Dr. Burks' policy was completed December 17 and dated

---

[3] The policy was printed on white paper with a large blue border.
[4] A second copy is retained by appellant.

the 20th. It did not leave the company's office until after the 16th.

We do not decide whether the company's statement in its letter, "Now that you have received your policy," etc., would estop it to deny the insurance if in fact the policy and letter (which seem to have been mailed together) had been received before Dr. Burks was injured.

If we disregard the company's testimony and look only to that presented on behalf of appellee—and in view of the jury's verdict this must be done—result is that there is no evidence of a substantial nature establishing delivery of the policy before Dr. Burks was injured. It follows that the judgment must be reversed, and this is done. The cause is dismissed.