POINSETT LUMBER & MANUFACTURING COMPANY *v.* TRAXLER.

Opinion delivered April 5, 1915.

1.  MASTER AND SERVANT—INJURY TO SERVANT—NEGLIGENCE.—Plaintiff was working in a saw mill, and was injured when another servant, standing within a few feet of plaintiff reversed certain levers, thereby causing the injury to plaintiff's hand. *Held*, it was the duty of plaintiff's fellow servant to look to see whether his act in reversing the levers would injure anyone, and a failure to do so, constituted negligence which would render the master liable should any injury result.

2.  MASTER AND SERVANT—NEGLIGENT ACT OF FELLOW SERVANT—ASSUMED RISK.—One servant does not assume the risk of danger created by the negligent act of a fellow servant.

3.  MASTER AND SERVANT—INJURY TO SERVANT—NEGLIGENT ACT OF FELLOW SERVANT.—When a servant is injured by the negligent act of another servant caused by the latter's reversing a lever on a machine at which both were working, the master is not relieved from liability when the plaintiff could, by the exercise of ordinary care, have ascertained the fact that the fellow servant was about to reverse the levers.

4.  APPEAL AND ERROR—OBJECTION TO TESTIMONY—WHEN MADE.—Where counsel for defendant after a witness had testified to certain incompetent facts, cross-examined the witness upon the same, it is then too late to move to exclude the testimony from the jury.

Appeal from Poinsett Circuit Court; *J. F. Gautney,* Judge; affirmed.

*Allen Hughes, W. W. Hughes* and *L. C. Going,* for appellant.

1.    Barker's statement to appellee after the accident was not a part of the *res gestae,* but a mere narrative of a past event, not an explanation nor illustration of the cause or manner of the accident, and the court erred in refusing to exclude it.   105 Ark. 247.

2.    Instruction 4 requested by appellant, should have been given.   100 Ark. 422; 104 Ark. 67.

3.    The court erred in refusing to give instruction 9, requested by the appellant.   While it is true that since the act of 1907 abolishing the common-law fellow-servant rule, the master may no longer avail himself of the defense that a plaintiff servant assumed the negligence of the fellow-servant to whose negligence the injury complained of is attributed, yet it is a rule not affected by that statute, that "the servant assumes all the ordinary risks of the service and all of the extraordinary risks, *i. e.,* those due to the master's negligence—of which he knows and the dangers of which he appreciates."   And the act does not abolish the assumption of risk.   3 Labatt, Master & Servant, § 1166a; 83 Conn. 642, 78 Atl. 422.

*Appellee, pro se.*

1.    Ordinarily objections to evidence must be interposed at the time it is sought to be introduced.   9 Enc. of Evidence 46.

If the testimony as to Barker's statements after the accident were inadmissible as a part of the *res gestae,* appellant waived the objection, not only by cross-examining the witness on the same point, without having moved to exclude, but also by waiting until other witnesses had been examined and appellee had rested his case, etc., before moving to exclude this testimony.   42 N. Y. 251; 12 Abb. Pr. 227; 2 Cyc. 697; 8 L. R. A. 61.

2.    There was no error in refusing to give instruction 4, requested by appellant.   The evidence shows that appellee was in the due performance of his duties, and was not himself negligent, but the negligence was that of a fel-

low-servant who was looking at appellee at the time. Cases cited by appellant do not apply here.

3. Instruction 9, requested by appellant, was properly refused, because it in effect told the jury that appellee assumed the risk of Barker's negligence. 98 Ark. 227.

McCULLOCH, C. J. Appellant was engaged in operating a sawmill in Poinsett County, Arkansas, and appellee received personal injuries while working at the mill as an employee of appellant, and this is an action to recover compensation for such injuries. Appellee was engaged in the work of tailing the edger, as it is termed by the witnesses; that is to say, he was receiving the pieces of timber from the edger and forwarding the same on down the roller to be conveyed out to the proper places. He charges negligence on the part of a fellow-servant in reversing the live rollers so as to cause two pieces of timber to be jammed together and catch his fingers. One of his fingers was mashed entirely off, and the end of another finger was mashed or bruised. The jury awarded damages in the sum of $250.

Appellee testified that at the time he received his injuries, he was endeavoring to get a piece of lumber out from under a cross-tie which was to be passed on down the rollers; that the rollers were standing still at the time and were not working well that day from some cause; and that one of his fellow-servants, Barker, by name, who was working at a cut-off saw a few feet distant, negligently reversed the rollers so as to cause another piece of timber to run back up against the cross-tie he was handling, and in that way his fingers were caught between the two pieces of timber. His testimony tends to show that it was his duty to get the piece of lumber out from under the cross-tie so that the tie could be passed on down the rollers, and that Barker was standing in a few feet of him and was looking at him when the rollers were reversed.

The court, in addition to giving several instructions, requested by appellant, submitted the case upon the following instruction given on the court's own motion: "No. 4. If you find from the evidence that the plaintiff, while

in the performance of his duty, placed his hand upon a piece of timber, then upon the roller, for the purpose of removing the same therefrom, and exercising due care for his own safety, and that an employee of the defendant then in charge of the manipulation of the roller, without notice to the plaintiff, suddenly reversed said roller, causing another timber to be jammed against said timber upon which the plaintiff's hand was resting, thereby causing the injury herein complained of, the plaintiff will be entitled to recover for said injury." That instruction correctly defined the issues to the jury.

(1) It is contended that the court erred in refusing to give instruction No. 4, requested by appellant, which is as follows: "You would not be justified in finding that Barker was negligent unless the preponderance of the evidence shows that Barker actually saw the perilous situation of the plaintiff in time to have averted the injury. It is not enough to render Barker negligent to show that he might have seen plaintiff by the exercise of ordinary care." Barker did not testify in the case, and appellee's testimony was to the effect that Barker was looking at him at the time he pulled the lever. This was not directly contradicted by any other witness, yet the jury were not bound to accept appellee's statement of the facts. *Skillern* v. *Baker*, 82 Ark. 86. The instruction was not, however, a correct statement of the law as applied to the issues in this case, for the evidence tends to show that appellee was engaged in work which fell within the line of his duty, and that the act of Barker in reversing the levers, without looking to see whether or not any injuries would be inflicted upon others working about the live rollers, constituted negligence. There is some dispute about whether or not appellee was in the line of his regular duties in trying to dislodge the piece of lumber under the cross-tie, but there was substantial evidence to the effect that that was his duty, and that he was at a place where Barker not only could have discovered his perilous situation, but in fact did discover it.

Counsel for appellant rely upon the case of *Chicago Mill & Lumber Co.* v. *Johnson,* 104 Ark. 67, as sustaining the correctness of this instruction. The facts of that case were, however, different. There the evidence showed that the fellow-servant who committed the alleged act of negligence owed the injured employee no duty except not to injure him after discovering his peril. The difference in the two cases is that in the one cited, a servant, without being affirmatively charged with the duty of taking any steps to protect his fellow-servants while at work, was held not to be chargeable with negligence unless he failed to exercise care after discovering the peril; whereas, in the present case, the fact is that the fellow-servant was manipulating the rollers and was charged with the duty of exercising care to see that his act did not result in injury to another servant. The men were working together in a few feet of each other, and it was the duty of appellee's fellow-servant, before reversing the levers, to exercise care to see whether any other servant was in position where he was likely to be injured by this act of reversing the levers. It would have been improper, therefore, to tell the jury that appellant would not be responsible for Barker's act unless the latter had discovered the perilous position of appellee, for it was the duty of Barker, before setting the rollers in motion, to see that other employees working there were not thereby placed in peril.

(2-3)    It is also insisted that the court erred in refusing to give the following instruction: "If the machinery that operated the live rollers at which the plaintiff was working was defective, and plaintiff had knowledge of same, and if Barker was, by means of the levers controlled by him, attempting to cause the live rollers to operate notwithstanding the defects, and if the plaintiff knew, or by the exercise of ordinary care should have known that Barker was doing so at the time he, plaintiff, was endeavoring to remove the timber from the rollers, he assumed any and all danger or risk of injury resulting from his so doing, and can not recover." That instruction was properly refused, for the servant did not assume

the risk of danger created by the negligent act of a fellow-servant. The question of Barker's negligence was correctly submitted to the jury, and the verdict depended upon the finding of the jury on that issue. Of course, appellee assumed the risk if he continued his efforts to dislodge the piece of lumber after having knowledge that Barker was going to reverse the rollers, but it would have been incorrect to declare the law to be that he assumed the risk simply because he could have ascertained that fact by the exercise of ordinary care. The jury might have understood from that that it was his duty to inquire of Barker whether or not he was going to reverse the rollers. The cause of the injury was not the mere moving of the rollers, but it was the reversal of the rollers which caused the other piece of timber to move back up and strike the one under which appellee had his hand. Therefore, it would have been incorrect, in any view of the case, to tell the jury that appellee assumed the risk simply because he knew, or might by the exercise of ordinary care have known, that Barker was undertaking to operate the live rollers.

We think the instructions were correct, and that no error was committed in refusing those asked by appellant.

(4) There is another assignment of error in the ruling of the court permitting the plaintiff to testify concerning Barker's statement to him immediately after the injury occurred. A sufficient answer to that exception is that the objection was not made in apt time, and appellant must be treated as having waived the erroneous admission of the statements. Instead of objecting at the time, appellant's counsel proceeded to cross-examine appellee on the subject; and after eliciting as much as he could, a motion was made to exclude all that appellee had said on the subject. Appellant speculated on the testimony in that way, and it was too late to raise an objection after the answers elicited were not satisfactory.

There is no error in the record which calls for a reversal of the case, so the judgment is affirmed.